UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURA A. MINEO,

                Plaintiff,

     v.

CAROLYN W. COLVIN,[1] Commissioner of
Social Security,

                Defendant.

**REPORT**
**and**
**RECOMMENDATION**

**12-CV-00410A(F)**

APPEARANCES:        FELICE A. BRODSKY
                              Attorneys for Plaintiff
                              FELICE A. BRODSKY, of Counsel
                              125-B Professional Parkway
                              P.O. Box 557
                              Lockport, New York 14094

                              WILLIAM J. HOCHUL, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              MARY PAT FLEMING
                              Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202, and

                              STEPHEN P. CONTE
                              Regional Chief Counsel - Region II
                              VERNON NORWOOD
                              Assistant Regional Counsel
                              United States Social Security Administration
                              Office of the General Counsel, of Counsel
                              26 Federal Plaza
                              Room 3904
                              New York, New York 10278

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on August 2, 2012. (Doc. No. 7). The matter is presently before the court on Defendant's motion for judgment on the pleadings, filed on January 15, 2013. (Doc. No. 9).

## BACKGROUND

Plaintiff Laura Mineo ("Plaintiff" or "Mineo"), seeks review of Defendant's decision denying her Disability Insurance Benefits ("DIB") ("disability benefits") under, Title II of the Social Security Act ("the Act"), and Supplemental Security Income Benefits ("SSI") benefits under Title XVI of the Act. In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff had the severe impairment of right-sided Meniere's disease,[2] and left ear hearing loss, that Plaintiff's depression was not a severe impairment, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 18-19).[3] Defendant determined that Plaintiff's earnings establish Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2011, and that Plaintiff must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits (R. 16), and further determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work. (R. 20). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged

---

[2] Meniere's disease is an abnormal increase in the volume of cochlear fluid (endolymph) in the inner ear characterized by symptoms of episodic vertigo, nausea, vomiting, tinnitus, the sensation of fullness or pressure, and progressive hearing loss.
[3] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

onset date of July 26, 2008, through the date of the Administrative Law Judge's decision on October 7, 2010.

## **PROCEDURAL HISTORY**

Plaintiff filed applications for disability benefits on January 26, 2009 (R. 88), alleging disability based on dizziness from Meniere's disease. (R. 103). The application was initially denied by Defendant on May 5, 2009 (R. 45), and pursuant to Plaintiff's request, filed May 11, 2009 (R. 54), a hearing[4] was held before Administrative Law Judge Timothy J. Trost ("Trost" or "the ALJ") on September 16, 2010, in Buffalo, New York. (R. 25-40). Plaintiff, represented by Amanda Jordan, Esq. ("Jordan"), appeared and testified at the hearing. The ALJ's decision denying the claim was rendered on October 7, 2010. (R. 16-23).

Plaintiff requested review by the Appeals Council on October 7, 2010, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on February 22, 2012. (R. 6). This action followed on May 4, 2012, with Plaintiff essentially alleging the ALJ erred by failing to find her disabled. (Doc. No. 1).

Defendant's answer, filed July 31, 2012 (Doc. No. 5), was accompanied by the record of the administrative proceedings. On January 15, 2013, Defendant filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Defendant's Memorandum"). Plaintiff did not file a response to Defendant's motion for judgment on the pleadings. Oral argument was

---

[4] The hearing transcript incorrectly denotes the claimant as Tony McConkey.

deemed unnecessary.  Based on the following, Defendant's motion should be DENIED, and the matter remanded for further development of the record; alternatively, Defendant's motion should be GRANTED.

## FACTS[5]

Plaintiff, Laura Mineo, ("Mineo" or "Plaintiff"), was born on July 13, 1962, graduated from high school, attended technical training for electrical work, refrigeration, and welding (R. 29), lives alone (R. 111), and worked as a general mechanic and locksmith from May 1981 until March 2005, and as a cashier at an apple orchard from June 2006 until September 2008.  (R. 122).  Plaintiff alleges she is not able to work because she suffers from Meniere's disease that results in dizzy spells, difficulty walking, nausea, ringing in the ears, and depression.  (R. 103).

Prior to the alleged date of disability onset, on May 10, 2004, Robert Williams, M.D. ("Dr. Williams), an otolaryngologist, completed a consultative medical examination on Plaintiff and opined Plaintiff was totally disabled as a result of vertigo from Meniere's disease.  (R. 274).  Plaintiff underwent psychological counseling treatment for depression from August 19, 2005 until March 2006.  (R. 243-48).

On May 8, 2008, Paul Garg, M.D. ("Dr. Garg") completed a routine physical examination of Plaintiff that was normal.  (R. 316).  Dr. Garg noted Plaintiff's medications included Lortab (depression), Meclizine (nausea/dizziness ), Zoloft (anxiety/depression ) Flexeril (pain), and Benicar (blood pressure).  *Id.*

---

[5] Taken from the record and the administrative hearing.

4

On January 14, 2009, Manjushree Dey, M.D. ("Dr. Dey"), completed gallbladder removal surgery on Plaintiff. (R. 190).

On February 9, 2009, Dr. Garg completed a physical examination of Plaintiff after Plaintiff sought treatment from Lockport Memorial Hospital for a back problem suffered a week earlier. (R. 317). On February 16, 2009, Plaintiff visited Dr. Garg with right hand numbness which Dr. Garg opined was possible cervical strain and arthritis. (R. 318).

On March 6, 2009, Renee Baskin, PhD., ("Dr. Baskin"), a psychologist with the Social Security Administration, completed a psychiatric evaluation of Plaintiff who reported anxiety, restlessness, muscle tension, crying spells, fatigue, and social withdrawal. (R. 199). Upon examination, Dr. Baskin diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, pain disorder associated with general medical condition, Meniere's disease, high blood pressure, back pain, and heart murmur. (R. 201). Dr. Baskin opined that Plaintiff exhibited intact attention and concentration, recent and remote memory, low average intellectual functioning with good insight and judgment, and that Plaintiff would have minimal limitations to following and understanding simple directions and instructions, performing simple tasks independently, maintaining concentration and a regular schedule, learning new tasks, and performing complex tasks independently. (R. 200). Plaintiff reported activities of daily living that include dressing, bathing, daily personal hygiene, the ability to manage money, and the need to occasionally pace her activities to accommodate for back pain. *Id*.

On May 4, 2009, Hillary Tzetzo, M.D. ("Dr. Tzetzo"), a psychiatrist with the Social Security Administration, completed a psychiatric review technique on Plaintiff and assessed Plaintiff with mild difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence and pace, ability to understand, remember, and carry out work instructions and maintain a schedule, make work related decisions, and relate to others in a low contact work setting.  (R. 214).  Dr. Tzetzo completed a mental residual functional capacity assessment on Plaintiff and assessed Plaintiff with moderate limitations to maintaining attention and concentration, ability to complete a normal workday without interruption from psychological symptoms, ability to interact appropriately with the public, respond to others in a work setting, travel in unfamiliar places or use public transportation, and respond to changes in a work setting.  (R. 221-23).  The same day, single decision maker ("SDM")[6] B. AielloHowe, completed a physical residual functional capacity assessment on Plaintiff and assessed Plaintiff as able to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk about six hours in an eight hour workday, and sit less than six hours in an eight hour workday, and unlimited ability to push or pull.  (R. 217).  SDM AielloHowe opined Plaintiff would be required to limit exposure to hazardous machinery and fast moving objects in the workplace.  (R. 219).

On May 8, 2009, Plaintiff returned to Dr. Garg with complaints of shoulder pain, anxiety and depression.  (R. 319).  Dr. Garg noted Plaintiff reported she "feels okay

---

[6]The term "single decision maker" or "SDM" refers to a "non-physician, state-agency disability analyst" who "'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Roth v. Commissioner of Social Security*, 2012 WL 4480688, at \*6 (N.D.N.Y. Sept. 26, 2012) (quoting 71 Fed. Reg. 45890-01 (Aug. 10, 2006)).

6

except [for] pain and discomfort in the shoulder and back," and recommended Plaintiff lose weight and exercise.  *Id.*  Plaintiff returned to Dr. Garg on July 8, 2009 for refills of Meclazine and Zoloft, and returned on October 5, 2009, for refills of Omeprazole (antacid) and Lortab.  (R. 322).

On July 16, 2009, Peter A. Campione, M.D. ("Dr. Campione"), an otolaryngologist, completed an audiogram nerve test on Plaintiff that showed borderline normal hearing, with right ear discrimination measured at 96%, left ear discrimination measured at 100%, and a speech reception threshold of 20 decibels on both sides.  (R. 323).  An electronystagmogram[7] test showed normal results, and an an electrocochleography[8] test for Meniere's disease was positive for Plaintiff's right ear.  Plaintiff's brainstem auditory evoked responses ("ABR") demonstrated delay in wave V[9] of Plaintiff's right ear with poor morphology, leading Dr. Campion to refer Plaintiff for a midbrain magnetic resonance imaging ("MRI") test to rule out anatomical abnormality.  *Id.*

On August 25, 2009, Plaintiff returned to Dr. Campione, who, upon examination of Plaintiff's July 24, 2009 MRI scan (R. 290), opined the scan showed normal results.  (R. 324).  A follow up examination with Dr. Campione on August 25, 2010 was normal.  (R. 333).

---

[7] Electronystagmogram tests measure involuntary rapid eye movements called nystagmus to evaluate the muscles that control eye movement and how well the eyes, inner ears, and brain maintain balance.
[8] Electrocochleography tests measure electric potential in a person's inner ear in response to electrical stimulation.
[9] ABR tests the timing of electrical waves from the brainstem in response to clicks in a person's ear. Three waves are typically plotted. Wave V represents specific anatomical points in the inferior colliculi (structure that forms a major component of the vertebrate midbrain) area of the auditory pathway.

## **DISCUSSION**

1.     **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant.  *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.**     **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion."  *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[10] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

---

[10] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[11] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

---

[11] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

**B.    Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In the instant case, the ALJ determined that Plaintiff did not engage in substantial gainful activity since July 26, 2008, the date of Plaintiff's alleged onset date of disability. (R. 18). Plaintiff does not contest this determination.

**C.    Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes

necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairments of right-sided Meniere's disease, and left-sided hearing loss as defined under 20 C.F.R. § 404.1520(c), that Plaintiff's depression was not a severe impairment, and that none of Plaintiff's severe impairments, alone or in combination meet or equal a listed impairment (R. 18-19).  Plaintiff does not contest the ALJ's finding.

### D.     Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 2.07 ("§2.07") (Disturbance of labyrinthine-vestibular function (including Meniere's disease), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders).

**Disturbance of labyrinthine-vestibular function (including Meniere's disease) § 2.07**

To be considered disabled from Meniere's disease, a disability claimant's hearing loss must be characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:

A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
B. Hearing loss established by audiometry.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 2.07 ("§ 2.07").

In this case, the ALJ determined, without reference to Plaintiff's Meniere's disease, or analysis of the listing requirements under § 2.07, that Plaintiff's severe impairment (Meniere's disease) was "not severe enough to meet or medically equal any impairments listed in Appendix 1 [and that] [n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (R. 19). Although as required, the ALJ considered the effects Plaintiff's Meniere's disease had with respect to Plaintiff's residual functional capacity (R. 20-21), the ALJ provided no explanation whether such evidence was sufficient to meet the criteria required for Plaintiff to be deemed disabled under § 2.07 of the listed impairments. As a result, the undersigned is therefore not able to conduct a meaningful review to consider whether substantial evidence supports the ALJ's determination Plaintiff is not able to meet or equal a listed impairment, and remand is required. *Conner v. Commissioner of Social*

13

Security, 2009 WL 3061993, at *8 (W.D.Pa., September 22, 2009) (remand where ALJ did not analyze Plaintiff's Meniere's disease using criteria under § 2.07).  Upon remand, the ALJ should include consideration of whether substantial evidence establishes Plaintiff meets or equals the criteria required under § 2.07 of the Act, or any other listed impairment.  Defendant's motion on this issue should be DENIED, with remand for further development of the record.  Should the district judge not agree with the undersigned's recommendation for remand, in the interest of completeness, the undersigned continues to review the next step of the ALJ's disability review process in the alternative.

**Affective Disorders § 12.04**

In this case, the ALJ determined Plaintiff's depression was not a severe impairment, as Plaintiff's mental impairment does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  (R. 18).  The ALJ further determined that Plaintiff has mild limitations to performing activities of daily living, social functioning, areas of concentration, persistence or pace, and experienced no episodes of decompensation of extended duration.  *Id.*  Plaintiff does not contest the ALJ's determination, and substantial evidence supports the determination.

In particular, on March 6, 2009, Dr. Baskin completed a psychiatric evaluation of Plaintiff and opined that Plaintiff is capable of performing activities of daily living that include bathing and dressing and managing money, has minimal to no limitations to following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriate

decisions, relating adequately with others, and appropriately dealing with stress. (R. 200-01). Plaintiff testified she prepares meals, washes dishes, does laundry, vacuums, goes grocery shopping, plays cards, and socializes. (R. 113-16). No additional evidence in the record indicates that Plaintiff's treating physicians referred Plaintiff to mental health counseling, or that Plaintiff received psychiatric counseling on a regular basis. As such, substantial evidence supports the ALJ's determination Plaintiff's mental impairment does not meet the criteria under § 12.04, and Plaintiff is not disabled under § 12.04.

**Credibility of Plaintiff's Subjective Complaints**

In the instant case, the ALJ, as required, evaluated Plaintiff's impairment under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record establishes Plaintiff has the severe impairments of right-sided Meniere's disease and left-sided hearing loss, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to an extent inconsistent with medical evidence in the record. (R. 21).

Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and may affect a claimant's ability to perform basic work activities if relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms," *Hall v. Astrue*,

677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)).  In this case, Plaintiff's subjective complaints are not supported by substantial evidence and are inconsistent with the record as a whole.  In particular, Plaintiff's allegation Plaintiff is not able to work because of Meniere's disease does not comport with Plaintiff's testimony she performs activities of daily living that include preparing meals, laundry, household chores and shopping.  (R. 113-16).  It is the function of the ALJ, not the court, to assess the credibility of witnesses, *Tankisi v. Commissioner of Social Security*, 521 F. App'x. 29, 35 (2d Cir. 2013), and accordingly, the undersigned will not disturb the ALJ's determination that the totality of Plaintiff's inconsistent statements renders Plaintiff less than credible.  The ALJ's credibility determination is thus supported by substantial evidence in the record.

### F. Suitable Alternative Employment in the National Economy

  Once an ALJ finds a claimant's impairments prevent a return to previous work, the burden shifts to the Commissioner to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).  It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints.  *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984).  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d

Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[12] *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[13] *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a

---

[12] "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[13] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.
    "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).
    "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

  In this case, the ALJ determined that Plaintiff retained the residual functional capacity to perform the full range of work at the sedentary level. (R. 23). Defendant maintains that the ALJ's residual capacity assessment properly considered Plaintiff's vocational capacity and residual functional capacity in conjunction with the Grids, and that Plaintiff, a younger individual with a high school education, with no issues of job transferability, was able to perform the full range of sedentary work and was therefore not disabled. Defendant's Memorandum at 18-19. In this case, the ALJ properly relied on the Grids, *Heckler* at 458, 462, in determining that Plaintiff was able to perform a full range of sedentary work.

## **CONCLUSION**

  Based on the foregoing, Defendant's motion should be DENIED, and the matter remanded for further development of the record; alternatively, Defendant's motion should be GRANTED, and the Clerk of the Court directed to close the file.

               Respectfully submitted,

               /s/ *Leslie G. Foschio*

               LESLIE G. FOSCHIO
              UNITED STATES MAGISTRATE JUDGE

DATED:  April 15, 2014
      Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   April 15, 2014
    Buffalo, New York